UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSANNE BARTOLOTTA,

        Plaintiff,

v.                                    Case No.  8:18-cv-2876-T-60SPF

ANDREW M. SAUL,[1]
Acting Commissioner of the
Social Security Administration,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff seeks judicial review of the denial of his claim for disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision is not based on substantial evidence and failed to employ proper legal standards, it is recommended that the Commissioner's decision be reversed and remanded.

## PROCEDURAL BACKGROUND

      On August 8, 2014, Plaintiff filed an application for DIB (Tr. 209–10).  The Commissioner denied Plaintiff's claim (Tr. 85–96).  On January 17, 2017, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 65–84).  A supplemental hearing was held on September 28, 2017, at which a medical examiner, Dr. Louis Fuchs, appeared

---

[1] Andrew M. Saul is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

and testified.  Plaintiff did not appear at this hearing but was represented by her counsel (Tr. 34–64).  Following the hearings, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claim for benefits (Tr. 12–33).  Plaintiff requested review from the Appeals Council, which was denied (Tr. 1–6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## **FACTUAL BACKGROUND AND THE ALJ'S DECISION**

Plaintiff, who was born in 1965, claimed disability beginning July 25, 2014 (Tr. 209).  Plaintiff has a general education degree (GED) (Tr. 223).  Plaintiff's past relevant work experience included work as a medical secretary (Tr. 60).  Plaintiff alleged disability due to fibromyalgia, headaches, lumbar spine pain, a thyroid condition, sleep apnea, Raynaud's syndrome, and depression (Tr. 18, 20).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since July 25, 2014 (Tr. 17).  After reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: lumbar spine impairment, status post lumbar surgery, fibromyalgia, and obesity (Tr. 17).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with the following exertional limitations: Plaintiff can sit six hours in an eight-hour

day, stand/walk two hours in an eight-hour day and lift/carry ten pounds frequently and twenty pounds occasionally (Tr. 19). Plaintiff can sit/stand/walk one hour without interruption (*Id.*). She can occasionally reach overhead with the right upper extremity, frequently reach overhead with the left upper extremity, can continuously reach in all other directions, and continuously handle, finger, feel, push and pull bilaterally (*Id.*). She can frequently operate foot controls bilaterally (Tr. 20). Plaintiff can occasionally climb stairs/ramps, occasionally balance, stoop, kneel, crouch and crawl, and can never climb ladders or scaffolds (*Id.*). Finally, Plaintiff can have occasional exposure to unprotected heights, humidity, wetness, extreme cold and extreme heat, but never have exposure to vibrations (*Id.*). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 21). Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work (Tr. 26). Accordingly, the ALJ found Plaintiff not disabled (Tr. 26).

## **LEGAL STANDARD**

To be entitled to benefits, a claimant must be disabled, meaning she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect ("the Regulations"). These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal

standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff raises two issues on appeal: (1) the ALJ failed to properly evaluate the medical opinions in the record; and (2) the ALJ failed to properly evaluate Plaintiff's subjective complaints.  For the reasons that follow, it is recommended that the ALJ's decision be reversed and remanded.

## I.    Medical Opinions

Plaintiff contends that the ALJ improperly applied the Regulations applicable to evaluating medical opinions because it assigned greater weight to the opinion of a non-examining, non-treating physician, Dr. Fuchs, than to the opinions of Plaintiff's treating physicians, Dr. Thomas Dowling and Dr. Sheldon P. Blau, and the Agency's orthopedic consultative examiner, Dr. Kanista Basnayake (Tr. 23–24, 1456–61, 1853–57, 2357–60). Similarly, Plaintiff argues that the ALJ erred by providing greater weight to the opinion of the one-time consulting psychologist, Dr. Paul Herman, than to the opinion of Plaintiff's treating psychologist, Dr. Elaine K. Greenwald (Tr. 18–19).

In assessing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)). The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)-(2)). Typically, the ALJ must afford the opinions of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commr. Of Soc. Sec.*, 363 F.3d 1155 at 1159 (11th Cir. 2004). Good cause exists where: (1) the treating physician's opinion is inconsistent with the record evidence; (2) the record evidence supports a conflicting finding; or (3) the treating physician's opinion is conclusory or incompatible with the physician's own medical records. *See* 20 C.F.R. § 404.1527(c); *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th

Cir. 2004); *Crawford*, 363 F.3d at 1159. If an ALJ finds that the treating physician's medical opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing good cause for discounting the opinion, and those reasons must be supported by substantial evidence. *Hargress v. Soc. Sec. Admin., Comm'r.*, 883 F.3d 1302, 1305-06 (11th Cir. 2018). The Court "will not second guess the ALJ regarding the weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

While an ALJ must ordinarily give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor does not merit such deference. *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An examining doctor's opinion, however, is usually accorded greater weight than that of a non-examining physician. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Besides the nature of a physician's relationship with a claimant, the ALJ must consider other factors in determining the weight given to each medical opinion, including: (1) the medical evidence and explanation supporting the doctor's opinion; (2) how consistent the doctor's opinion is with the record as a whole; and (3) the doctor's area of specialization. 20 C.F.R. § 404.1527(c). While the ALJ must consider each factor, it is not mandatory that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). Irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician [treating or non-treating]

7

when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832 (citing *Sryock,* 764 F.2d at 835) (emphasis in original).

### A. Drs. Dowling, Blau, and Basnayake's Opinions

Dr. Dowling, an orthopedic surgeon, began treating Plaintiff in December 2006, a couple of months after Plaintiff was involved in a motor vehicle accident (*see* Tr. 298, 382–94, 370–75).    For most of 2014 and part of 2015, Dr. Dowling (and his associate, Dr. Arjang Abbasi) treated Plaintiff for neck and back pain associated with an L4-L5 disc herniation with severe spinal stenosis and Bertolotti's syndrome with conservative treatment, including physical therapy, epidural steroid injections, and pain medication (Tr. 343–44, 347, 351, 355, 757, 1456).   On April 18, 2015, Dr. Dowling noted that Plaintiff "failed all reasonable means of conservative non-operative treatment," and recommended surgery to alleviate her pain (Tr. 1320).   On June 26, 2015, Plaintiff underwent a lumbar laminectomy at L4-L5 with excision of herniated disc performed by Dr. Dowling (Tr. 1453–55). Five months after Plaintiff's surgery, Dr. Dowling completed a Spinal Impairment Questionnaire (Tr. 1456–61).   Dr. Dowling opined that Plaintiff could sit for less than one hour and stand/and or walk for two hours in an eight-hour workday and she could occasionally lift and carry twenty pounds (Tr. 1458). Additionally, Dr. Dowling opined that Plaintiff's symptoms would interfere with her attention and concentration from 1/3 to 2/3 of an eight-hour workday (Tr. 1460).   Dr. Dowling noted that activity and prolonged positioning aggravated Plaintiff's back pain associated with her spinal condition (Tr. 1456).   Accordingly, Dr. Dowling stated that Plaintiff should avoid continuous sitting and recommended that she get up every fifteen

to thirty minutes (Tr. 1459). Dr. Dowling also opined that Plaintiff would be absent from work over three times per month as a result of her impairments or treatment, and that Plaintiff's limitations apply as far back as July 25, 2014 (Tr. 1461).

In addition to her treatment with Dr. Dowling, Plaintiff received treatment from Dr. Blau, a rheumatologist, for daily, widespread, persistent pain with additional symptoms of headaches, dizzy spells, and numbness/tingling (Tr. 496–97). Dr. Blau diagnosed Plaintiff with fibromyalgia (Tr. 503). On October 28, 2015, Dr. Blau completed a Fibromyalgia Questionnaire, in which he noted that Plaintiff suffered from widespread pain in all quadrants of her body (Tr. 1853–54). Similar to Dr. Dowiling, Dr. Bleu opined that Plaintiff was limited to sitting for less than one hour and standing and walking for less than one hour in an eight-hour workday, and occasionally lifting and carrying five pounds (Tr. 1856). He further opined that Plaintiff's symptoms would interfere with her attention and concentration from 1/3 to 2/3 of an eight-hour workday and that she would likely be absent from work more than three times per month (Tr. 1857). Dr. Blau affirmed this opinion in a statement dated May 25, 2017 (Tr. 2388). Dr. Blau also opined that Plaintiff would likely have an increase in her symptoms if she had to engage in full-time work activity.

On February 1, 2017, Dr. Basnayake, in his role as a consultative examiner, conducted an orthopedic examination of Plaintiff (Tr. 2349–63). Upon examination, he noted that Plaintiff was unable to walk on heels and toes; unable to complete a squat; had mild difficulty in the ability to zip, button, and tie; had paracervical tenderness; trigger point tenderness in the lower cervical spine; positive straight leg raise on the right at 30

degrees;[2] and fibromyalgia tenderness in the bilateral lower cervical spine at C5-C7 (Tr. 2353–54).  Dr. Basnayake also noted reduced cervical and lumbar spine range of motion (*Id.*).  Based on these objective findings, Dr. Basnayake opined that Plaintiff could never lift or carry any weight and, like Drs. Dowling and Bleu, opined that Plaintiff was limited to sitting for two hours, standing for one hour, and walking for one hour in an eight-hour workday (Tr. 2357–58).  Dr. Basnayake further opined that Plaintiff could sit without interruption for fifteen minutes, stand for fifteen minutes, and walk for ten minutes (*Id*), but she could perform no postural activities including, balancing, stooping, and kneeling (Tr. 2360).

Despite acknowledging that Drs. Dowling and Blau were Plaintiff's treating physicians, the ALJ provided "lesser weight" to their opinions on two grounds.  First, the ALJ found that the restrictions noted by both physicians regarding Plaintiff's ability to sit, stand, walk, and use her upper extremities were not supported by "objective evidence"[3] and were contradicted by Plaintiff's recent physical

---

[2] The Straight Leg Raise ("SLR") test, a relevant history, and a decreased range of motion, are considered the most important physical signs of disc herniation, regardless of the degree of disc injury.  SLR can be used to rule in or out neural tissue involvement as a result a lumbar disc herniation.  Neurologic pain which is reproduced in the leg and low back between 30-70 degrees of hip flexion is suggestive of lumbar disc herniation at the L4-S1 nerve roots.  Physiopedia, *Straight Leg Raise Test*, available at https://www.physio-pedia.com/Straight_Leg_Raise_Test (last visited November 4, 2019).

[3] Under the Regulations objective medical evidence includes "medical signs, laboratory findings, or both."  20 C.F.R. § 404.1513.  "Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques.  Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." 20 C.F.R. § 404.1502(c).  "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from a Plaintiff's

examinations. Second, the ALJ found that the medical opinions were not consistent with the wide range of daily activities reported by Plaintiff (Tr. 22–23). The ALJ also discounted Dr. Basnayake's opinion on the basis that it was inconsistent with his own treatment notes.

Substantial evidence does not support the ALJ's decision to discount Plaintiff's treating physicians' opinions. Dr. Dowling relied on various objective imaging studies to support his assessment of Plaintiff's condition, including an April 2015 lumbar MRI showing "severe degree of stenosis" and an EMG study from March 2015, showing L5-S1 radiculopathy and suggesting left L4-S1 radiculopathy (Tr. 793, 796). Additionally, Dr. Dowling relied on his physical examination of Plaintiff showing positive straight leg tests and Plaintiff's limited range of motion and tenderness (Tr. 1457).

Similarly, Dr. Bleu's diagnosis of fibromyalgia and his stated limitations are based on his physical examination of Plaintiff, which showed more than eleven positive tender points in her shoulders, neck, elbows, hips and back (Tr. 1854). Further, Dr. Blau's opinion is consistent with Dr. Basnayake's opinion and the evidence supporting his findings. Dr. Basnayake observed that Plaintiff exhibited fibromyalgia tenderness in the bilateral lower cervical spine at C5-C7, bilateral supraspinatus, bilateral lateral epicondyle, bilateral knees, and positive leg raising test

---

statements or symptoms. Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(f).

on the right side in supine and sitting position (Tr. 2353–54). Additionally, even if objective evidence did not fully support Dr. Blue's finding, it is well established that the cause or causes of fibromyalgia are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. *See Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1335 (M.D. Fla. 2003); *Peters v. Astrue*, 232 F. App'x. 866, 872 (11th Cir. 2007) ("one hallmark of fibromyalgia is a lack of objective evidence"). Therefore, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret data for the reader. *Moore*, 405 F.3d at 1212.

As to the ALJ's statement that "recent examinations" contradict Drs. Dowling and Blau's opinions (Tr. 23), the Court notes that the ALJ failed to provide proper citations supporting his findings. Assuming, however, that the ALJ's statements refer to Dr. Basnayake's physical examination of Plaintiff showing muscle strength of 5/5 with no sensory or reflexes abnormalities and grip strength of 5/5 bilaterally (Tr. 2349–63), such findings do not contradict Plaintiff's treating physicians' opinions or Dr. Basnayake's own findings. Particularly, Drs. Dowling, Blau, and Basnayake's opinions express concern with prolonged positioning and increased levels of activity, rather than with muscle weakness as suggested by the ALJ (*see* Tr. 1456, 2388). The ALJ's statement that the physicians' opinions are "not consistent with or supported by objective medical evidence" is not supported by substantial evidence.

The ALJ's decision to discount the opinion of Plaintiff's examining physicians based on Plaintiff's reported activities of daily living is equally unpersuasive (Tr. 23).

Although, as stated by the ALJ, Plaintiff reported to engage in different activities of daily living such as driving, running errands, cooking, shopping, preparing meals, performing household chores, boating, watching television, and playing with her grandchildren; a review of Plaintiff's functional report, testimony, and statements to her physicians show that Plaintiff engaged in these activities in a very limited manner (Tr. 65–84, 256–267, 2351–62). For example, Plaintiff states that she cannot run around with her grandchildren, she cannot sit too long to watch television, she can carry only a few items when she shops, cannot stand in line for too long and that her total time shopping does not exceed 15 minutes (Tr. 74, 80–81, 263). Plaintiff further clarifies that she only drives short distances because of numbness in her heels and feet and severe pain in her arms (Tr. 80). She also states, contrary to the ALJ's finding, that although one of her hobbies if boating, she has not done it (Tr. 263). Regarding meals preparation, she states she prepares only easy meals such as cereal for breakfast because she is unable to stand for too long and that she does not cook (Tr. 262, 2352). Regarding household chores, she states that she only cleans an outdoor bar table and hangs laundry because those activities do not require bending (Id.). In addition, Plaintiff testified that due to her fibromyalgia, activities such as typing, flossing, brushing hair, buttoning, and zippering are difficult (Tr. 75). Although she can take showers every day, she has difficulty with other hygiene activities that involved deep bending like shaving down to the ankles and cutting her toenails (Tr. 75, 81–82). A complete review of the record, therefore, suggests that the ALJ mischaracterized Plaintiff's ability to engage in activities of daily living. In providing reasons for

discounting a treating physician's opinion, the ALJ cannot misstate or mischaracterized the evidence, *see Ellis v. Comm'r. of Soc. Sec.*, No. 6:16-CV-1384-ORL-GJK, 2017 WL 1282867, at *4 (M.D. Fla. Apr. 6, 2017).

**B.  Dr. Fuchs' Opinion**

Dr. Fuchs, a non-examining medical consultant, opined in an interrogatory dated March 8, 2016, that Plaintiff's medical record only supported a diagnosis of chronic lumbar spine myofascitis and obesity. Dr. Fuchs rejected Plaintiff's diagnosis of fibromyalgia on the basis that it was of subjective nature. As to Plaintiff's physical limitations, Dr. Fuchs opined that Plaintiff could sit six hours in an eight-hour day, stand/walk two hours in an eight-hour day and lift/carry ten pounds continuously and twenty pounds occasionally. Plaintiff could sit/stand/walk one hour without interruption. Plaintiff could occasionally reach overhead with her bilateral arms. Plaintiff could occasionally climb stairs/ramps, balance, stoop, kneel, crouch and crawl, but could never climb ladders or scaffolds. Plaintiff could have occasional exposure to unprotected heights, humidity and extreme temperatures, but never to vibrations (Tr. 2378–383).

In reaching his RFC's determination, the ALJ provided great weight to Dr. Fuchs' opinion and adopted his stated limitations as Plaintiff's RFC. To support his determination, the ALJ stated that Dr. Fuchs is a specialist in orthopedics, he reviewed the entire medical file, and his opinion was well supported by the totality of evidence (Tr. 24, 19–20, 24, 2378–383). Plaintiff argues that the ALJ erred in providing great weight to Dr. Fuchs's opinion because, in addition to contradicting

the opinion of Plaintiff's treating physicians, "Dr. Fuchs' testimony was riddled with statements which undermined his own credibility," [4] and Dr. Fuchs has not examined a patient since 2001 (Doc. 12 at 19–20). Additionally, Plaintiff argues that Dr. Fuchs' opinion deserves no deference on the issue of fibromyalgia because he determined that Plaintiff's fibromyalgia was not a medically determinable impairment (Doc. 12 at 21).

Even if the Court rejects Plaintiff's arguments as to Dr. Fuchs' credibility and qualifications, *see Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (stating that it is up to the Commissioner and not to the courts "to weigh the evidence and to resolve material conflicts in the testimony"), Dr. Fuchs' opinion does not constitute substantial evidence to support the ALJ's RFC assessment. First, the opinion of a non-examining physician "taken alone," does not constitute substantial evidence to support an ALJ's disability decision, particularly when the opinion contradicts a treating physician's opinion. *See Edward v. Sullivan*, 937 F.2d 580, 584–85 (11th Cir. 1991); *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). Dr. Fuchs' opinion is the only medical opinion supporting the ALJ's RFC determination in this case. Dr. Fuchs's opinion directly contradicts Dr. Dowling's findings as well as the opinion of Dr. Basnayake as to Plaintiff's spinal problems and related limitations (*see* Tr. 1456–61, 2357–60. 2364–2375). Given that the ALJ, as discussed above, has failed to

---

[4] Plaintiff argues that Dr. Fuchs was incompetent in failing to note in his initial opinion that the Plaintiff had a lumbar spine surgery (Tr. 45), he could not answer why Plaintiff underwent surgery and stated that the surgeon would have to be asked that (Tr. 54-55), and that he failed to consider Plaintiff's MRI of the cervical spine showing impingement of the C5 nerve root or the EMG study (Tr. 46- 47).

provide adequate reasons to discount Plaintiff's treating physicians' opinions, Dr. Fuchs's opinion alone cannot provide substantial evidence to support the ALJ's findings as to Plaintiff's spinal related limitations.

Additionally, Dr. Fuchs' opinion fails to address any possible limitations related to Plaintiff' fibromyalgia because, as stated by his own testimony, he restricted his opinion to limitations associated with what he considered were Plaintiff's only medical impairments—chronic lumbar spine myofascitis and obesity. His opinion, therefore, does not address Plaintiff's other impairments, including status post lumbar surgery and fibromyalgia (Tr. 17). The ALJ's RFC determination, therefore, was not supported by substantial evidence.

### C. Dr. Greenwald's Opinion

Dr. Greenwald treated Plaintiff for complaints of depression, pain, fatigue, problem with sleeping, and lack of concentration (Tr. 1898). Dr. Greenwald diagnosed Plaintiff with depressive disorder not otherwise specified (Tr. 1891). To support her diagnosis, Dr. Greenwald stated that Plaintiff showed depressed mood, persistent or generalized anxiety, constricted and irritable affect, feelings of guilt or worthlessness, hostility or irritability, difficulty thinking or concentrating, easy distractibility, flight of ideas, poor recent memory, anhedonia, appetite disturbances/weight change, change in personality, decreased energy, motor tension, social withdrawal or isolation, and sleep disturbances (Tr. 1892). Dr. Greenwald assessed marked limitations in the ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; work in coordination with or near others without being distracted by

them and make plans independently (Tr. 1894). Dr. Greenwald assessed moderate-to-marked limitations in understanding and memory and attention/concentration and moderate limitations in the ability to maintain social functioning and adaptation.   In addition, Dr. Greenwald opined that the claimant has suffered episodes of decompensation in a work like setting, and assigned Plaintiff a GAF score of 57, indicating moderate symptoms.

The ALJ discounted Dr. Greenwald's opinion on the grounds that Dr. Greenwald saw Plaintiff a total of four times within approximately a month, her opinion was not consistent with the other evidence in the record, and her opinion was not consistent with Plaintiff's reported activities of daily living (Tr. 18).   Plaintiff argues that the ALJ's decision to provide little weight to Dr. Greenwald's opinion is contrary to the Regulations. The Court disagrees.   Although Plaintiff characterized Dr. Greenwald as her treating psychologists, the length of treatment (one month) as well as the lack of a longitudinal picture of Plaintiff's mental problems in Dr. Greenwald's notes support, at best, a finding that Dr. Greenwald was Plaintiff's examining physician.   Therefore, Plaintiff's arguments that Dr. Greenwald's opinion deserve deference is unavailing.   *See* 20 C.F.R. § 404.1527 (a)(2) (stating that the Commissioner will consider that "an ongoing treatment relationship" exists, when the medical evidence shows that a plaintiff has seen, the medical source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)").   Further, Dr. Greenwald's opinion is incongruent with Plaintiff's lack of mental treatment.   *See* 20 C.F.R. § 404.1527(c)(2)(i).   As stated by the ALJ, Plaintiff testified that she no longer

receives any psychiatric treatment or takes any medications for her depression.  An independent review of the record shows that although Plaintiff took antidepressants during the relevant period, the medication was prescribed for her fibromyalgia and to help her sleep apnea rather than her depression (Tr. 78).  Further, Plaintiff underwent no treatment or consultation for her alleged depression since her last visit to Dr. Greenwald in August 2014, almost three years prior to the administrative hearing (Tr. 78).  In discounting Dr. Greenwald's opinion, the ALJ also noted that the opinion was inconsistent with the record.  *See* 20 C.F.R. § 404.1527((c)(4).  Plaintiff's mental examination during an October 29, 2014 mental consultation with Dr. Paul Herman was unremarkable.  Additionally, Plaintiff could engage in various activities of daily living (Tr. 18), and although those activities were limited by Plaintiff's physical impairments, nothing shows that Plaintiff's limitations were due to mental issues (*see* Tr. 80–83).  Overall, the Court finds that in discounting Dr. Greenwald's opinion, the ALJ properly considered the Regulations and his decision is supported by substantial evidence.

## II.    Plaintiff's Subjective Complaints

Plaintiff's last argument centers on the ALJ's evaluation of her subjective complaints and the ALJ's decision to discount her credibility[5] regarding those complaints.  The evaluation of a claimant's subjective symptoms is governed by the "pain standard."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  Under this standard,

---

[5] The Court recognizes the SSA no longer uses the term "credibility" when evaluating whether a claimant's subjective complaints are consistent with and supported by the record.  Because the parties employ this term in their memorandum, however, the Court utilizes it here for consistency and ease of reference.

the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Where a claimant satisfies this "pain standard," the Regulations dictate that the ALJ then assess the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[6] Considerations relevant to this evaluation include: the objective medical evidence; evidence of factors that precipitate or aggravate the claimant's symptoms; medications and treatments available to alleviate those symptoms; the type, dosage, effectiveness, and side effects of such medications and treatments; how the symptoms affect the claimant's daily activities; and the claimant's past work history. *Id.* "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513. 517 (11th Cir. 1984)). If the ALJ elects not to credit the claimant's subjective testimony, he must articulate explicit and adequate reasons for doing so. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted). A reviewing court will not disturb a clearly articulated credibility finding that is supported by substantial evidence in the record. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted).

---

[6] Applicable as of March 28, 2016.

In reaching his credibility determination, the ALJ discounted Plaintiff's subjective complaints on the following grounds:

> [Plaintiff's] testimony about her signs, symptoms and limitations is not well-supported by clinical or diagnostic findings. Her activities of daily living are inconsistent with her complaints. Her characterization of pain and symptoms is not consistent with treatment records [specifically those showing medical improvement]. She was able to participate in the hearing without any overt pain behavior and was able to respond to questions in an appropriate manner. These factors all cast doubt upon the claimant's allegations.

(Tr. 25). Although the ALJ provided specific reasons to discount Plaintiff' subjective complaints, these reasons are not supported by substantial evidence. As previously discussed, the ALJ's evaluation of Plaintiff's activities of daily living is a mischaracterization of the evidence and cannot support his finding. S*ee Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (stating "[n]or do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians."). Further, substantial evidence does not support the ALJ's statement that Plaintiff's signs, symptoms, and limitations are not well-supported by clinical or diagnostic findings. As previously discussed, the ALJ failed to properly weigh Plaintiff's treating physicians' opinions and Plaintiff's subjective complaints are congruent with these opinions.

Similarly, the ALJ's decision to discount Plaintiff's subjective testimony on the basis of medical improvement is not supported by substantial evidence. Although Plaintiff testified that she is not taking medication for fibromyalgia, she states that she has taken at least seven different medications for her symptoms without relief and that she suffered

side effects from some of the medications (Tr. 72–73).  As to Plaintiff's spinal problems, Plaintiff testified that her surgery only alleviated her sciatic pain and that she still sees a physician for her back pain and takes medication as necessary, which depends on Plaintiff's level of activity (Tr. 73–74).  Plaintiff's statements are consistent with her treating physicians' opinions and objective findings (*see* Tr. 2351).  Although the Court acknowledges that credibility determinations are left to the Commissioner, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Here the ALJ improperly discounted the Plaintiff's treating physicians' opinions and mischaracterized plaintiff's ability to engage in daily activities.  Therefore, the ALJ's reasoning to discount Plaintiff's subjective complaints is not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED:

1.   The decision of the Commissioner be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.   The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

REPORTED in Tampa, Florida, on December 30, 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

cc:     Hon. Thomas P. Barber
        Counsel of Record